## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) **DAVID RUBLE, II,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| -vs- | ) | **Case No. 19-CV-114-GKF-FHM** |
| | ) | |
| (1) **JOE ALLBAUGH[1], DIRECTOR** | ) | |
| **Respondent** | ) | |

---

## PETITIONER'S AMENDED HABEAS PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY PURSUANT TO 28 U.S.C. §2254 AND REQUEST FOR AN EVIDENTIARY HEARING

---

Submitted by

**DEBRA K. HAMPTON, OBA # 13621**
Hampton Law Office, PLLC
3126 S. Blvd., # 304
Edmond, OK 73013
(405) 250-0966
(866) 251-4898 (fax)
hamptonlaw@cox.net
Attorney for Petitioner

---

[1] Joe Allbaugh resigned from his position as Director of the Oklahoma Department of Corrections on June 12, 2019. Scott Crow has been named as the Interim Director and should be substituted for Allbaugh.

# TABLE OF CONTENTS

CASES ................................................................................................................... iv

STATUTES............................................................................................................ vii

RULES .................................................................................................................. vii

CONSTITUTIONAL PROVISIONS ................................................................... vii

I.      JURISDICTION ......................................................................................... 1

II.     PRIOR PROCEEDINGS ............................................................................ 1

III.    TIMELINESS OF PETITION .................................................................... 3

IV.     STANDARD OF REVIEW ........................................................................ 3

V.      STATEMENT OF THE FACTS ................................................................ 5

I.      GROUND: ................................................................................................... 6

        THE TRIAL COURT'S ERRONEOUS RULINGS ON CHALLENGES FOR
        CAUSE DEPRIVED APPELLANT OF HIS FULL COMPLEMENT OF
        PEREMPTORY CHALLENGES TO USE AT HIS DISCRETION AND
        PREVENTED HIS ABILITY TO REMOVE OBJECTIONABLE JURORS. AS
        A RESULT, TWO OBJECTIONABLE JURORS WERE ULTIMATELY
        SEATED ON APPELLANT'S JURY IN VIOLATION OF THE SIXTH AND
        FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION

ARGUMENT AND AUTHORITY ...................................................................... 7

II.     GROUND: ................................................................................................. 13

        THE CUMULATIVE EFFECT OF PROSECUTORIAL MISCONDUCT
        CONSTITUTED PLAIN ERROR AND DEPRIVED APPELLANT OF A FAIR
        TRIAL

ARGUMENT AND AUTHORITY .................................................................... 13

        a.    Invoking Sympathy for the Victim. ......................................... 14
        b.    Societal Alarm. ........................................................................ 16
        c.    Facts Not in Evidence. ............................................................ 17

III.    GROUND: ............................................................................................... 19

        MR. RUBLE WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF
        COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH
        AMENDMENTS TO THE UNITED STATES CONSTITUTION          19

ARGUMENT AND AUTHORITY ........................................................................... 19

VI.     EXHAUSTION OF CLAIMS........................................................................ 20

VII.    CONCLUSION.......................................................................................... 20

VIII.   CERTIFICATE OF SERVICE .................................................................... 21

## TABLE OF AUTHORITIES

**CASES**

*Aycox v. State*,
   1985 OK CR 83, 702 P.2d 1057, 1058 ............................................................. 18

*Berger v. U.S.*,
   295 U.S. 78, 88 (1935) ...................................................................................... 13

*Bowen v. Maynard*,
   799 F.2d 593, 612 (10th Cir. 1986) .................................................................. 16

*Brown v. Uphoff*,
   381 F.3d 1219, 1225 (10th Cir. 2004) ............................................................... 19

*Chapman v. California*,
   386 U.S. 18 (1967) .............................................................................................. 7

*Darden v. Wainwright*,
   477 U.S. 168 (1986) ........................................................................................... 12

*Darr v. Burford*,
   339 U.S. 200, 203 (1950) ................................................................................... 19

*Davis v. Burke*,
   179 U.S. 399, 401-403 (1900) ........................................................................... 19

*Donnelly v. DeChristoforo*,
   416 U.S. 637, 643 (1974) ....................................................................... 12, 13, 16

*Dunkle v. State*,
   2006 OK CR 29, 139 P.3d 228, 245 .................................................................. 18

*Fisher v. Gibson*,
   282 F.3d 1283, 1307 (10th Cir. 2002) ............................................................... 18

*Greer v. Miller*,
   483 U.S. 756, 765 (1987)) .................................................................................. 13

*Harrington v. Richter*,
   562 U.S. 86 (2011) ............................................................................................... 4

*Hawkins v. State*,
   1986 OK CR 58, 717 P.2d 1156, 1158 .............................................................. 11

*Hicks v. Oklahoma*,
    447 U.S. 343, 346 (1980) ................................................................ 11

*In re Murchison*,
    349 U.S. 133, 136, (1955) ................................................................ 7

*Irvin v. Dowd*,
    366 U.S. 717, 722 (1961) ................................................................ 7

*Jackson v. Virginia*,
    443 U.S. 307, 332 (1979) ................................................................ 4

*Jimenez v. Quarterman*,
    555 U.S. 113, 119 (2009) ................................................................ 3

*Johnson v. State*,
    2013 OK CR 12, ¶ 16, 308 P.3d 1053, 1057 ........................... 17

*Lafler v. Cooper*,
    566 U.S. 156, 173 (2012) .............................................................. 19

*Locke v. Saffle*,
    237 F.3d 1269, 1273 (10th Cir. 2001) ..................................... 3

*Logsdon v. State*,
    2010 OK CR 7, ¶ 38, 231 P.3d 1156, 1169 ............................ 17

*Maestas v. U.S.*,
    341 F.2d 493, 496 (10th Cir.1965) ......................................... 14

*McCarty v. State*,
    1988 OK CR 271, 765 P.2d 1215, 1220 ................................. 16

*McCarty v. State*,
    1988 OK CR 271, 765 P.2d 1215, 1221 ........................... 15, 16

*McElmurry v. State*,
    2002 OK CR 40, 60 P.3d 4, 34 ................................................. 16

*Mendiola v. Schomig*,
    224 F.3d 589, 592 (7th Cir. 2000) .......................................... 4

*Miller-El v. Cockrell*,
    537 U.S. 322, 340 (2003) ......................................................... 4, 12

*Mitchell v. Gibson,*
   262 F.3d 1036, 1061 n. 12 (10th Cir.2001) ................................................. 17

*Neill v. Gibson,*
   278 F.3d 1044, 1058 (10th Cir.2001) ...................................................... 16

*Ross v. Oklahoma,*
   487 U.S. 81, 88 (1988); ............................................................ 11

*Smith v. State,*
   1987 OK CR 235, 744 P.2d 1282, 1285 ................................................ 13

*Strickland v. Washington,*
   466 U.S. 668, 681 (1984) ........................................................... 18

*Tart v. State,*
   1987 OK CR 113, 634 P.2d 750 ...................................................... 17

*Tibbetts v. State,*
   1985 OK CR 43, 698 P.2d 942, 946 .................................................. 11

*Tobler v. State,*
   1984 OK CR 90, 688 P.2d 350, 354 .................................................. 15

*Tucker v. State,*
   1972 OK CR 170, 499 P.2d 458, 460 ................................................. 16

*U.S. v. Murray,*
   784 F.2d 188, 189 (6th Cir.1986) ..................................................... 14

*U.S. v. Sands,*
   899 F.2d 912 (10th Cir. 1990) ........................................................ 14

*U.S. v. Gabaldon,*
   91 F.3d 91, 93 (10th Cir. 1996) ...................................................... 13

*Williams v. State,*
   1983 OK CR 16, 658 P.2d 499, 501 .................................................. 15

*Williams v. Taylor,*
   529 U.S. 362, 405-406 (2000) ................................................. 4, 18, 19

vi

**STATUTES**

22 O.S. § 655 .................................................................................................. 7, 11

28 U.S.C. § 2254 (d) ......................................................................................... 3, 4

**RULES**

Rule 3.5(A)(5), *Rules of the Oklahoma Court of Criminal Appeals* ............................................ 10

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. VI ........................................................................................ passim

U.S. Const. amend, XIV ..................................................................................... 7, 11, 14

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **(1)** | **DAVID RUBLE, II,** | ) |
| | **Petitioner,** | ) |
| | | ) |
| **-vs-** | | ) |
| | | ) |
| **(1)** | **JOE ALLBAUGH[2], DIRECTOR** | ) |
| | **Respondent** | ) |

Case No. 19-CV-114-GKF-FHM

**PETITIONER AMENDED PETITION FOR WRIT OF HABEAS CORPUS**
**AND BRIEF IN SUPPORT**
**BY A PERSON IN STATE CUSTODY PURSUANT TO 28 U.S.C. §2254**

The Petitioner, David Ruble II, is an inmate in the custody of the Oklahoma Department of Corrections, ODOC No. 744537, at the Lawton Correctional Facility, in Lawton, OK, represented by attorney, Debra K. Hampton, submits this as his Amended Petition for Federal Habeas Relief under 28 U.S.C. §2254. The Petitioner states the following in support thereof:

**I.      JURISDICTION**

The action does not involve diversity jurisdiction.

**II.     PRIOR PROCEEDINGS**

**ORIGINAL CONVICTION**

Court:           Tulsa County

Case No:       CF-2014-2691

Offense:        Count I: Murder-First Degree, in violation of 21 O.S.2011, § 701.7;
                   Count II: Attempted Robbery with a Firearm 21 O.S.2011; § 801;
                   Count III: Conspiracy, in violation of 21 O.S. 2011, § 421.

---

[2] Joe Allbaugh resigned from his position as Director of the Oklahoma Department of Corrections on June 12, 2019. Scott Crow has been named as the Interim Director and should be substituted for Allbaugh.

| | |
|---|---|
| Plea: | Not Guilty |
| Judge: | Honorable David Youll. |
| Trial: | On May 27, 2016, a jury convicted Petitioner of **Count I**, Felony Murder in the First Degree, and assessed a penalty of life imprisonment in the ODOC; **Count II**, Attempted Robbery with a Firearm, and assessed a penalty of life imprisonment in the ODOC; and **Count III**, Conspiracy, and assessed a penalty of ten years imprisonment in the ODOC. (Tr. 905; O.R. 308-310) |
| Sentence: | Petitioner was formally sentenced on September 6, 2016. The State moved to dismiss **Count II** on the basis of merger, and the Court agreed. (S. Tr. 3-4) The Court did not deviate from the jury's recommendation, and Petitioner was sentenced to life imprisonment and ten years, respectively, in the ODOC. (S. Tr. 11) The Court ordered the sentences to run consecutively to each other and assessed various costs. (O.R. 369-375) Mr. Ruble appealed this Judgment and Sentence. |

**DIRECT APPEAL**

| | |
|---|---|
| Court: | Oklahoma Court of Criminal Appeals ("OCCA") |
| Case No: | F-2016-843 |
| Date filed: | September 19, 2016 |
| Closed: | December 14, 2017    **AFFIRMED** |
| Opinion: | Unpublished |
| Counsel: | Rhiannon Sisk OIDS |

The Petitioner raised these propositions to support his Direct Appeal:

I.    THE TRIAL COURT'S ERRONEOUS RULINGS ON CHALLENGES FOR CAUSE DEPRIVED APPELLANT OF HIS FULL COMPLEMENT OF PEREMPTORY CHALLENGES TO USE AT HIS DISCRETION AND PREVENTED HIS ABILITY TO REMOVE OBJECTIONABLE JURORS. AS A RESULT, TWO OBJECTIONABLE JURORS WERE ULTIMATELY SEATED ONAPPELLANT'S JURY IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE II, SECTIONS 7, 19, AND 20 OF THE OKLAHOMA CONSTITUTION

II.    THE CUMULATIVE EFFECT OF PROSECUTORIAL MISCONDUCT CONSTITUTED PLAIN ERROR AND DEPRIVED APPELLANT OF A FAIR TRIAL

2

III.   THE TRIAL JUDGE ERRED IN NOT INSTRUCTING THE JURY ON LESSER OFFENSES

IV.   MR. RUBLE WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE II, §§ 7 AND 20 OF THE OKLAHOMA CONSTITUTION

V.    THE ACCUMULATION OF ERRORS DEPRIVED MR. RUBLE OF A FAIR TRIAL AND THE DUE PROCESS OF LAW SECURED TO HIM BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE II, SECTIONS 7, 19, AND 20 OF THE OKLAHOMA CONSTITUTION

On December 27, 2017, Petitioner filed a Pro Se Motion for Suspended Sentence under 22 O.S. § 982a. Petitioner's motion was denied on January 30, 2018 which could extend the AEDPA.

## III.   TIMELINESS OF PETITION

The Petitioner asserts this Petition is timely under 28 U.S.C. § 2244(d) the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Petitioner's direct appeal was affirmed on December 14, 2017, the AEDPA did not run until, March 14, 2018, which is the ninety (90) days expiration in which to file a petition for writ of certiorari in the United States Supreme Court. *Locke v. Saffle*, 237 F.3d 1269, 1273 (10th Cir. 2001); *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009). On March 4, 2019, three hundred fifty five (355) days into the AEDPA, Petitioner filed his habeas Petition. To date, there has not been a Response filed by the Respondent.

## IV.   STANDARD OF REVIEW

The Petitioner states that under 28 U.S.C. § 2254 (d) an Application for a Writ of Habeas Corpus shall not be granted regarding a claim unless the adjudication of the claim in State Court unless (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2)

3

resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In the instant action, the State Court's determination rose to the level of a 28 U.S.C. § 2254 (d)(1) and (2) violation, resulting in a further denial of fundamental fairness and warranting Federal Habeas relief. The OCCA's opinion does not properly analyze the Petitioner's claims in relation to prejudice as the vagueness of the OCCA's opinion is contrary to Supreme Court precedents. AEDPA's deferential standard of review "does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) As the Supreme Court explained: "A federal court can disagree with a State Court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence." *Id.* "If a State Court's finding rests on thin air, the petition will have little difficulty satisfying the standards for relief under § 2254." *Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000).

Any analysis that does not properly address the claims in relation to prejudice does not comport with federal law. The AEDPA has added, immediately following the "clearly established law" requirement, a clause limiting the area of law to that "determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1), See *Williams v. Taylor,* 529 U.S. 362, 381 (2000). Section 2254(d) reflects the view that habeas corpus is a "***guard against extreme malfunctions in the state criminal justice systems,***" not a substitute for ordinary error correction through appeal. *Harrington v. Richter*, 562 U.S. 86 (2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 332 (1979) (Stevens, J., concurring in judgment). This court should conclude that the State Court's determination would warrant Federal Habeas relief because the Petitioner has demonstrated the

4

State Court's determination violated 28 U.S.C. § 2254(d).

## V.    STATEMENT OF THE FACTS

On May 29, 2014, Petitioner was with Demonte Rushing, Travis Lozada and Jerica Cherry in his black Dodge Charger. They were going to the club to celebrate a birthday. (Tr. 521-522) On the way, Travis Lozada saw a white, four-door pickup with a trailer that contained six all-terrain vehicles (ATVs). Lozada said he wanted the ATVs and that it would be the "lick of the summer." (Tr. 523) The truck was parked in a parking lot on Peoria Avenue. Petitioner pulled into a Sonic across the street from where the truck was parked. (Tr. 524)

At the Sonic, Rushing moved to the driver's seat, Petitioner got into the front passenger seat, Lozada moved to the rear passenger seat and Cherry stayed in the driver's side passenger seat. (Tr. 526) At that point, the truck pulling the ATVs had left the parking lot. Rushing drove in the direction the truck pulling the ATVs attempting to catch up to it. Rushing ran a red light and caught up to the truck as it entered the Gilcrease Expressway. (Tr. 530-532) As the vehicles were entering the expressway, and once they were on the expressway, shots were fired at the truck from the Charger. (Tr. 533) Jorge Ochoa, an occupant of the truck, stated that the shots came from the rear passenger side window. (Tr. 504-505) Jerica Cherry stated that Lozada was the shooter and Rushing testified that Petitioner was the shooter. (P. Tr. 65, Tr. 533) The truck was occupied by April Montano and her family. They had been at Keystone Lake riding the ATVs in celebration of Ms. Montano's eighth grade graduation. (Tr. 451, 454)

The occupants of the truck were not sure what was happening. (Tr. 458) When April's father, Mr. Meza-Ramirez, who was driving the truck, realized someone was shooting at them, he sped up trying to get away and told everyone to get down. (Tr. 459) Jorge Ochoa, his son, realized

5

April had been shot and Mr. Meza-Ramirez pulled over on the shoulder. (Tr. 461) The Charger passed the truck, then stopped and reversed to where the truck was stopped. (Tr. 505) Another shot was fired. (Tr. 505) According to Demonte Rushing and Jerica Cherry, once the occupants of the Charger realized there were children in the truck, they sped away. (P. Tr. 40, 67)

Mr. Meza-Ramirez's wife, who was also in the truck, called 911 but could not tell them the truck's location. The police and medics arrived. April was taken to the hospital where it was discovered that she had been shot one time in the forehead. She died from the gunshot wound. (O.R. 45, Tr. 584)

Police looked for the black Dodge Charger. Petitioner's car was spotted by police and followed by a police helicopter until units on the ground could locate him. (O.R. 45) He was driving at a high rate of speed. After he was pulled over, he and Lozada were arrested for charges unrelated to the homicide. (O.R. 45) Eventually, Lozada told police he would lead them to where the gun was. The gun was found near where the Charger was stopped. (O.R. 45)

Cherry and Rushing stated to the police and testified at trial. Cherry was not charged with any crimes. Rushing was offered consideration in exchange for his testimony. (Tr. 515) Cherry testified that Lozada had the gun initially, then she hid her face, and when they were leaving, Petitioner had the gun. (Tr. 606-607)

I.   **GROUND:**

**THE TRIAL COURT'S ERRONEOUS RULINGS ON CHALLENGES FOR CAUSE DEPRIVED APPELLANT OF HIS FULL COMPLEMENT OF PEREMPTORY CHALLENGES TO USE AT HIS DISCRETION AND PREVENTED HIS ABILITY TO REMOVE OBJECTIONABLE JURORS. AS A RESULT, TWO OBJECTIONABLE JURORS WERE ULTIMATELY SEATED ON APPELLANT'S JURY IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION**

6

## ARGUMENT AND AUTHORITY

Petitioner argued in direct appeal the State trial court improperly denied challenges for cause against jurors not qualified to serve, compelling Appellant to use peremptory challenges against seven jurors who should have been removed for cause and resulting in the ultimate empaneling of two objectionable jurors. Petitioner argued that some jurors were biased because they had read about the case, and some in the jury pool were dishonest with the court when asked whether they knew anything about the case. Counsel was forced to use what were supposed to be discretionary challenges to correct these errors, leaving him with insufficient peremptory challenges to remove two objectionable jurors. This deprivation of the full amount of peremptory challenges violated his statutory right under 22 O.S.2011, § 655, and his due process rights under the Fourteenth Amendment to the United States Constitution exhausting his peremptory challenges and not being afforded additional ones by the trial court, Petitioner was then left with two biased jurors seated on his jury, violating his right to a fair and impartial jury under the Sixth Amendment.

The Sixth Amendment guarantees "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed…." "[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). The constitutional infringement described below cannot be considered harmless error because it affected the fairness of the trial and the OCCA determination was objectively unreasonable, given the Supreme Court's opinion in *Irvin v. Dowd and Chapman v. California,* 386 U.S. 18 (1967). The Constitution's mandate would not prohibit a change of venue to a different district if extraordinary local prejudice will prevent a fair trial — a "basic requirement of due process." *In*

*re Murchison*, 349 U.S. 133, 136 (1955)

Petitioner argued in the OCCA, at the beginning of voir dire, the trial court clerk swore in the prospective jurors. (Tr. 13) Following the oath, the trial judge asked, "[a]nd does anyone know anything about Petitioner, Mr. Manning, the attorney for Petitioner, the State's attorneys, the charges in the case, or the allegations in the case? Does any one of you know anything about the parties or the allegations?" (Tr. 17) The Trial Court followed these questions with an admonition there were no right and wrong answers, stating, "the main thing is to answer truthfully to all the questions." (Tr. 18) The entire panel responded in the negative to each question. (Tr. 18)

The next day, Juror S.C. informed the judge's staff she remembered the case from the news. (Tr.142-143) Based on this information, the parties agreed that Mr. Fu would inquire of the panel whether anyone had seen anything about the case on the news or in the media. When the court asked this question, seventeen jurors raised their hands. (Tr. 143) Mr. Fu asked further general questions about the news stories. (Tr. 144-146) Mr. Manning reminded the court that the jurors swore to tell the truth and when initially asked whether they knew anything about the case they all responded in the negative. (Tr. 188-189) Defense counsel further informed the court that the defense had been very relieved by this response because he thought he had a group of people who knew nothing about the case. (Tr. 189)

The judge stated he believed the jurors had just thought more about it and realized they had seen it on the news. (Tr. 190) Mr. Manning argued that Petitioner was entitled to people on the jury who were truthful and who would take the situation seriously enough to make sure an answer was correct before giving it. (Tr. 190-191)

Mr. Manning then requested to strike nine jurors for cause, based on both exposure to pre-trial publicity and because they lied to the court. (Tr. 191) The court asked each potential juror if he thought he could be fair and unbiased, and whether he would follow the law. Each juror assured the court he could be, so the Trial Court denied the challenges. (Tr. 194) However, the jurors' answers belied these claims, and the Trial Court erred in failing to excuse these jurors for cause. Petitioner argued in relation to the nine jurors:

1. **A.D.M.** The juror did not admit knowing anything about the case when originally asked. However, when asked a second time, she admitted hearing on the news that "they were attacked driving down the highway and the teenaged girl was killed." (Tr. 206) She admitted feeling sad upon hearing this and hoped they caught whoever did it. (Tr. 208) A.D.M. stated that she still felt she could be fair and decide the case based only on what she heard from the witness stand. (Tr. 209) However, when asked why she did not raise her hand the first time she was asked whether she knew anything about the case, A.D.M. replied that since no one else raised his hand, she thought she must be mistaken about what the judge meant. (Tr. 210) Mr. Manning asked to strike her for cause because of her lie to the court, exposure to pre-trial publicity, and because "Mr. Petitioner is entitled to not only an impartial juror but somebody that is going to independently answer questions well and truly themselves." This request was denied with an exception. (Tr. 210-211)

2. **L.B.** The juror did not admit knowing anything about the case when originally asked, but when asked a second time, admitted he heard about it on the news. (Tr. 212) He said he was not thinking when he answered the first time. (Tr. 212) When the judge asked L.B. if hearing about the case would affect his ability to be fair and impartial to both sides, he initially said yes; then said no, he misunderstood the question. (Tr. 212) Mr. Manning moved to strike the juror for cause because he lied to the court and because of exposure to pretrial publicity. The motion was denied with an exception. (Tr. 215)

3. **I.B.** The juror did not admit knowing anything about the case when originally asked but when asked a second time, he admitted he had seen the case on the news. (Tr. 226-227) He said it "sucked" that it happened in Tulsa and in general. Mr. Manning moved to strike L.B. for cause because of his dishonesty to the court and because of exposure to pretrial publicity. His motion was denied with an exception. (Tr. 229)

9

4.   **K.K.** The juror did not admit knowing anything about the case when originally asked. When asked a second time, K.K. admitted she had seen the case on TV and remembered that someone had shot through a vehicle and shot a girl. She also remembered the involvement of an ATV. (Tr. 230-231) Mr. Manning moved to strike her for cause because she lied to the court and due to exposure to pretrial publicity. The motion was denied with an exception. (Tr. 233)

5.   **K.S.** The juror did not admit knowing about the case when originally asked. When asked a second time, however she admitted she had heard about the case on the news and must have misinterpreted the judge's question when initially asked. (Tr. 234) Mr. Manning moved to strike her for cause because of her dishonesty to the court and because of exposure to pretrial publicity. His motion was denied with an exception. (Tr. 235)

6.   **K.B.** The juror did not admit knowing about the case when originally asked. Upon being asked a second time, K.B. admitted she had heard about the case. (Tr. 244) She stated that the case was unfortunate, disturbing, and sad. (Tr. 244) Mr. Manning moved to strike her because of exposure to pretrial publicity and because she had lied to the court. Counsel's motion was denied with an exception. (Tr. 247)

7.   **T.B.** The juror did not admit knowing about the case when originally asked. When asked a second time, T.B. admitted she had heard about the case when it happened and she paid attention to it because her son drove a truck and had four wheelers and she wanted to make sure it was not her son. (Tr. 252) Mr. Manning moved to strike her for cause due to her lie to the court and her exposure to pretrial publicity. That motion was denied with an exception. (Tr. 254)

8.   **H.C.** The juror failed to reveal that she knew about the case when she was originally asked. She only admitted knowing about the case when asked a second time, admitting she had heard about it on the news when it happened. (Tr. 257) She remembered that it happened on an expressway, possibly the Gilcrease, that a four-wheeler was involved and that it was a young fourteen-year-old girl who was killed. (Tr. 258) Mr. Manning moved to strike her for cause due to her exposure to pretrial publicity and her lie to the court. The motion was denied with an exception. (Tr. 260)

9.   **D.L.** The juror did not admit knowing about the case when originally asked, but when asked a second time, admitted he heard about it on the news when it happened. (Tr. 260) He remembered that a fourteen-year-old girl was killed in a vehicle. (Tr. 261) Mr. Manning moved to strike him for cause due to his dishonesty to the court and his exposure to pretrial publicity. Defense's motion was denied with an exception. (Tr. 262-263)

10

Petitioner argued on appeal these jurors were biased because of the pretrial publicity they were exposed to. In relation to the pretrial publicity claim, the OCCA determined Petitioner failed to properly raise the claim,  did not develop this claim with citation to authority or argument, and it is not properly raised relying on Rule 3.5(A)(5), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2017). Petitioner argues that the OCCA was confronted with a set of facts regarding pretrial publicity with the jurors admitting knowledge and specific facts of the offense alleged against Petitioner. Further, Petitioner argues that prejudice must be presumed thus the OCCA unreasonably determined the facts in light of the evidence violating 28 U.S.C. § 2254(d)(2).

The sheer volume of jurors who were, for whatever reason initially untruthful, together with the considerable extent of specific knowledge previously undisclosed, is alarming and should create serious doubt about the jurors' ability to be fair, impartial, and competent triers of fact. Their exposure to pre-trial publicity undoubtedly caused these jurors to be biased against the defense. Several jurors expressed feelings about the case and hopes for a particular outcome to the case. The fact that they told the judge they would not be biased and would follow the law was insufficient to overcome their initial opinions. Assurances by the jurors in this case they could be impartial should be of no concern because a bias and prejudice should be presumed. One purpose of the Due Process Clause of the Fourteenth Amendment is to insure these "essential demands of fairness." *Lisenba v. California*, 314 U.S. 219, 236 (1941). In *Hawkins v. State*, 1986 OK CR 58, 717 P.2d 1156, 1158. The OCCA determined "all doubts regarding juror impartiality must be resolved in the defendant's favor." (citing *Tibbetts v. State*, 1985 OK CR 43, 698 P.2d 942, 946). While the OCCA found error in *Hawkins,* that the juror should have been excused for cause, however, the

11

OCCA arrived at a different decision in the case at bar which should warrant the granting the Writ.

> **Prejudice must be presumed from erroneous denials of the for-cause peremptory challenges thus violating the Sixth Amendment.**

These erroneous denial of for-cause challenges caused Appellant to use peremptory challenges to cure the trial court's error, resulting in a deprivation of his full complement of peremptory challenges. Pursuant to 22 O.S. § 655 provides that in prosecutions for first degree murder, a defendant is entitled to nine peremptory challenges. The trial court's error deprived Petitioner of procedural due process which worked a substantive due process violation. *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988); *Hicks v. Oklahoma,* 447 U.S. 343, 346 (1980). Because of the trial court's error, two objectionable jurors, I.B. and H.C., were empaneled and served on Petitioner's jury, depriving him of his right to trial by an impartial jury in violation of the Sixth Amendment.

The OCCA determined that "[w]hile trial counsel named the two jurors he would have removed had he had more peremptory challenges, he made no record as to why those jurors were unacceptable. Thus, this issue has not been properly preserved.  Moreover, the record does not support any claim that jurors were untruthful, dishonest, or biased.  This proposition is denied." [Exhibit 1] Petitioner argues that the OCCA's resolution of this claim should not be afforded deference under the AEDPA because the deferential standard of review "does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). As the Supreme Court explained: "A federal court can disagree with a State Court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing

12

evidence." *Id.* Petitioner argues that the facts the OCCA was confronted with warrants granting the Writ.

II.    **GROUND:**

**THE CUMULATIVE EFFECT OF PROSECUTORIAL MISCONDUCT CONSTITUTED PLAIN ERROR AND DEPRIVED APPELLANT OF A FAIR TRIAL**

**ARGUMENT AND AUTHORITY**

Petitioner states [t]he clearly established Federal law relevant to a habeas court's review of prosecutorial misconduct claims is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986). Prosecutorial misconduct violates a defendant's constitutional rights when it "so infects the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Here the Prosecutors' highly prejudicial attempts to invoke sympathy for the victim, create societal alarm and the proclamation of facts not in evidence so infected the trial with unfairness as to necessitate granting the federal Writ. See *Donnelly v. DeChristoforo*, *supra*; *U.S. v. Gabaldon*, 91 F.3d 91, 93 (10th Cir. 1996) (citing *Greer v. Miller*, 483 U.S. 756, 765 (1987)).

In *Berger v. U.S.*, 295 U.S. 78, 88 (1935), the Court laid the groundwork for identifying, and remedying, prosecutorial misconduct to ensure the protection of the rights of the accused. The Court explained that although prosecutors "may strike hard blows," they are "not at liberty to strike foul ones." *Id.* at 88. "[I]t is as much [their] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Id.* In *Darden*, SCOTUS clarified that "foul blows" violate defendants' constitutional rights where they "'so infect[] the trial with unfairness……" (quoting *Donnelly*, *supra*, at 643). "The 'win at

13

any cost' mentality...has no place in the criminal justice system." *Smith v. State,* 1987 OK CR 235,744 P.2d 1282, 1285. Under the circumstances, it cannot be said that the evidence was so strong and the verdict of guilt so inevitable, as to render the prosecutor's flagrant misconduct "harmless beyond a reasonable doubt." *Chapman v. California*, *supra*. The instances of prosecutorial misconduct are discussed in relation to each claim.

      **a.    Invoking Sympathy for the Victim.**

      Petitioner argued in the OCCA that the first instance of misconduct was early in trial. The State called multiple witnesses who were in the white truck with decedent to testify to the events of May 29, 2014. (Tr. 450, 474, 482, 497). Each witness testified to her injuries and her death. During the testimony of the third witness, Jose Garcia Castillo, the prosecutor asked whether the witness saw "them disconnecting her" from life support. (Tr. 493) This was not relevant to any material fact in the trial. Trial counsel objected as to relevancy at a sidebar. (Tr. 493) Trial counsel further objected at this same time to the cumulative nature of the witnesses and argued that calling too many witnesses to testify to the same matter was inflammatory. (Tr. 494) Trial counsel pointed out to the trial court that the jurors were being emotionally affected. (Tr. 495) The court did not allow the witness to answer the question but did not tell the jury to disregard it. (Tr. 496) The objection to the cumulative testimony and the inflammatory nature of it was overruled. (Tr. 495). In *Maestas v. U.S.*, 341 F.2d 493, 496 (10th Cir.1965), the Tenth Circuit recognized that a cautionary instruction cannot cure the error where the error is likely to make a sufficiently strong impression on the jury it will be unable to disregard it. See *U.S. v. Sands*, 899 F.2d 912 (10th Cir. 1990) (citing *U.S. v. Murray*, 784 F.2d 188, 189 (6th Cir.1986) a cautionary instruction under such circumstances is "very close to an instruction to unring a bell").

14

Petitioner further argued that during the second closing argument, the prosecutor continued to improperly invoke sympathy for the victim. The Prosecutor calling this case a "forever" case because it was "not a case where a drug dealer died" — was a prejudicial statement meant solely to inflame the emotions of the jury. The prosecutor told the jury they should convict and choose life without parole because of the worth of the victim arguing a life sentence would be appropriate where a drug dealer died. (Tr. 897) She repeatedly referenced that there were children in the truck. (Tr. 896, 897, 898) Defense counsel failed to object to these instances of misconduct but further argues the failure of Trial Counsel in ground III for relief.

These improper questions and statements by the prosecutors were intended to inflame the jury and create sympathy for the victim which creates prejudice and bias. They served no other purpose and were irrelevant to any material fact. They were improper and constituted prosecutorial misconduct violating the Sixth and Fourteenth Amendments.

The OCCA has held [i]t is improper for the prosecutor to attempt to distract and inflame the jury with tactics designed to cause the jury to find against the defendant because of sympathy for the victim. *McCarty v. State*, 1988 OK CR 271, 765 P.2d 1215, 1221; *Tobler v. State*, 1984 OK CR 90, 688 P.2d 350, 354; *Williams v. State*, 1983 OK CR 16, 658 P.2d 499, 501. In this action, the OCCA determined Petitioner "fails to show prejudice from comments about his supposed financial circumstances or the "forever" nature of the crime. The record does not support any conclusion that this argument had any effect on the jury's finding of guilt, and he received the minimum sentence." The Court therefore denied that proposition. Petitioner argues when a trial is unfair our system of the administration of justice fails.

15

   **b.**   **Societal Alarm.**

During the State's second closing argument, the prosecutor first stated that the driver of the truck was terrified because "[i]t's basically that he's in a warzone, and he is just driving down the streets of Tulsa." (Tr. 896) The prosecutor asked what kind of person "hangs out with people who shoot people." (Tr. 898) She said what kind of person witnesses a shooting at a truck full of people and knows there are kids inside. She questioned what kind of person arrives at the police station after a "ten-minute, high speed chase across this city and acts like he is playing Dance Dance Revolution?" (Tr. 898) She said it would be nice if he "checked first to make sure there weren't kids in the car." (Tr. 898) She claimed Petitioner was a person who did not care. (Tr. 898)

The prosecutor further argued that Petitioner was especially heinous because he was attempting to commit a robbery of a luxury item, instead of an item he needed. (Tr. 899) She further stated that the jury should give him life without parole "if you're just done with David [Petitioner] and his random violence against other people." (Tr. 899)

Each statement was intended to cause societal alarm. The State wanted the jurors to think that Petitioner was a monster that would continue to threaten society. These comments were not relevant and, as a result, they were prosecutorial misconduct that prejudiced Petitioner. This argument is substantially more prejudicial than probative. *McElmurry v. State*, 2002 OK CR 40, 60 P.3d 4, 34. Even "[a]n improper appeal to societal alarm typically does not amount to a denial of due process." *Jones v. Gibson*, 206 F.3d 946, 959 (10th Cir.2000) However, the prosecutor's misconduct had a cumulative effect which rendered the trial fundamentally unfair.

c.    **Facts Not in Evidence.**

Petitioner argued on appeal in the State's first closing argument, the prosecutor stated that Petitioner dumped the gun. (Tr. 873) He further stated that Petitioner rolled down the window and allowed Mr. Lozada to throw the gun out of the window. (Tr. 873) There is no testimony during trial that Petitioner dumped the gun or that he rolled the window down to allow Mr. Lozada to dump it. Prosecutorial misconduct requires vacating the conviction when there is a corruption of the ***truth-seeking function*** of the trial process

In the State's second closing argument, the prosecutor discussed Petitioner's life. She stated "he didn't need the money." (Tr. 899) She said he was driving a "$40,000 car." (Tr. 899) She also said "he's got a huge family that would have helped him if he needed anything." (Tr. 899) Defense counsel failed to object to these statements. These statements of facts not in evidence were improper. Their purpose was to inflame the jury and prejudice Petitioner. They amounted to prosecutorial misconduct resulting in prejudice. The State may argue inferences from the facts, but has no right to resort to pure conjecture and it is improper to comment on facts not in evidence. *Bowen v. Maynard*, 799 F.2d 593,612 (10th Cir. 1986); *McCarty v. State,* 1988 OK CR 271, 765 P.2d 1215, 1220; *Tucker v. State*, 1972 OK CR 170, 499 P.2d 458, 460.

Petitioner argues he should be entitled to habeas relief because the prosecutor's challenged conduct and remarks, viewed in light of the trial as a whole, resulted in a fundamentally unfair proceeding. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 645 (1974); *Neill v. Gibson*, 278 F.3d 1044, 1058 (10th Cir.2001). But further, Petitioner argues that because the Sixth Amendment right to a fair trial is implicated Petitioner need not establish that the remark rendered the entire proceeding fundamentally unfair. See *Neill*, 278 F.3d at 1058; *Mitchell v. Gibson*, 262 F.3d 1036,

17

1061 n. 12 (10th Cir.2001). The OCCA's decision denying relief on these claims were contrary to, and involved an objectively unreasonable application of, clearly established Supreme Court precedent violating 28 U.S.C. § 2254(d)(1) and an unreasonable determination of the facts in light of the evidence. The OCCA determined:

> [T]he record does not support Ruble's claim that the prosecutor invoked sympathy for the victim. Ruble's objection to a single irrelevant question was sustained, curing any error. *Johnson v. State,* 2013 OK CR 12, ¶ 16, 308 P.3d 1053, 1057. The prosecutor made several arguments referring explicitly to Ruble's actions and the facts of the case. These did not, as he claims, amount to societal alarm, which refers to general arguments about deterrence of crime, the crime rate, or making an example of the defendant in order to discourage other potential crimes. *Logsdon v. State*, 2010 OK CR 7, ¶ 38, 231 P.3d 1156, 1169. ***Most of the other comments made were reasonable inferences*** from the evidence. Ruble fails to show prejudice from comments about his supposed financial circumstances or the "forever" nature of the crime. The record does not support any conclusion that this argument had any effect on the jury's finding of guilt, and he received the minimum sentence. This proposition is denied.

The right to a "fair and impartial trial ... becomes meaningless if the State is allowed to make inflammatory and prejudicial comments." *Tart v. State*, 1987 OK CR 113, 634 P.2d 750. A defendant's right to a fair trial maybe destroyed by improper statements and comments made by a prosecutor. However, the cumulative effect of these numerous instances of prosecutorial misconduct was so prejudicial as to adversely affect the fundamental fairness and impartiality of Petitioner's trial because the Court determined "Most of the other comments made were reasonable inferences" not denying that the other comments were prejudicial. Petitioner respectfully moves this Court to issue an Order granting of a conditional Writ to retry the Petitioner.

III.   **GROUND:**

**MR. RUBLE WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

### ARGUMENT AND AUTHORITY

The Supreme Court's analysis of ineffective assistance of counsel claims under *Strickland v. Washington*, 466 U.S. 668, 681 (1984) held a conviction cannot stand if a defense counsel's performance falls below the objective standards of reasonableness required by the Sixth Amendment and this deficient performance creates a reasonable probability the defendant did not receive a fair trial with a reliable result. The reasonable probability standard does not require a showing of prejudice beyond a reasonable doubt, by clear and convincing evidence, or even by a preponderance of the evidence. Rather, it merely requires a showing sufficient to undermine the confidence in the outcome. *Id*. at 694-95; *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000) (O'Connor, J., concurring); *Fisher v. Gibson,* 282 F.3d 1283, 1307 (10th Cir. 2002).

Here, Petitioner was prejudiced by Trial Counsel's failure to object to improper comments by the prosecutor during closing arguments. Failure to object to inadmissible evidence can constitute ineffective assistance of counsel. *Dunkle v. State*, 2006 OK CR 29, 139 P.3d 228, 245; *Aycox v. State*, 1985 OK CR 83, 702 P.2d 1057, 1058. Here, as discussed in Proposition II, Trial Counsel failed to adequately protect the appellate record and jeopardized Petitioner's right to a fair trial by failing to object to the prosecutorial misconduct during closing arguments where failing to object to these prejudicial arguments cannot be considered a sound trial strategy. Defense counsel's failure to protect Petitioner's right to a fair trial was outside the wide range of professionally competent assistance and resulted in prejudice. The purpose of the effective

19

assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation but "simply to ensure that criminal defendants receive a fair trial." *Strickland*, *supra* at 689. The facts demonstrate that counsel's performance fell outside the wide range of professionally competent assistance and there is a reasonable probability that the outcome of Petitioner's trial would have been different, but for trial counsel's unprofessional errors or omissions. *Id.,* at 694.

Further, regarding the AEDPA, the Supreme Court in *Lafler v. Cooper*, 566 U.S. 156, 173 (2012) (explaining that, when "AEDPA does not present a bar to granting" relief because the state court "failed to apply" the correct legal test, the federal habeas court "can determine the principles necessary to grant relief"); *Williams v. Taylor,* 529 U.S. 362, 406 (2000) (explaining that when a state-court decision falls within the "contrary to" clause, "a federal court will be unconstrained by § 2254(d)(1)"); see also *Brown v. Uphoff*, 381 F.3d 1219, 1225 (10th Cir. 2004). Petitioner argues the OCCA's determination should not be afforded deference under the AEDPA because it represents an extreme malfunction in the criminal justice system.

## VI.    EXHAUSTION OF CLAIMS

The Petitioner states that his claims which he raises in the petition are exhausted as the State Court has had the first opportunity to hear the claims sought to be vindicated in this Federal Habeas proceeding. The Federal Court has required a state prisoner to present the state courts with the same claims he urges upon the federal courts. See *Darr v. Burford*, 339 U.S. 200, 203 (1950); *Davis v. Burke*, 179 U.S. 399, 401-403 (1900).

## VII.   CONCLUSION

WHEREFORE, Petitioner argues that he is entitled to habeas relief and a conditional writ should issue. The OCCA opinion was contrary to clearly established federal law warranting relief.

Respectfully Submitted,


/s/ *DEBRA K. HAMPTON*
DEBRA K. HAMPTON, OBA # 13621
Hampton Law Office, PLLC
3126 S. Blvd., # 304
Edmond, OK 73013
(405) 250-0966
(866) 251-4898 (fax)
hamptonlaw@cox.net
Attorney for Petitioner

## VIII.   CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of November, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrant:

Office of the Attorney General, e-mail: fhc.docket@oag.state.ok.us


/s/ *DEBRA K. HAMPTON*
DEBRA K. HAMPTON