## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

DAVID RUBLE, II,         )
         )
         Petitioner,        )
         )
v.         )         **Case No. 19-CV-0114-GKF-CDL**
         )
SCOTT CROW,         )
         )
         Respondent.        )

### OPINION AND ORDER

Before the Court is the Amended 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus (Petition) (Dkt. 10) filed by Petitioner David Ruble, II (Ruble).[1] Ruble is a state inmate appearing through counsel. Having considered Ruble's Amended Petition (Dkt. 10), Scott Crow's (Respondent) Response (Dkt. 14), Ruble's Reply (Dkt. 17), records from state court proceedings (Dkt. 7, 8), and applicable law, the Court finds and concludes that Ruble is not entitled to habeas relief. The Court therefore denies, in part, and dismisses, in part, the Amended Petition.

### BACKGROUND

The State of Oklahoma charged Ruble, in Tulsa County District Court Case No. CF-2014-2691, with one count of first-degree felony murder, one count of attempted robbery with a firearm, and one count of conspiracy (Dkt. 10 at 1). Ruble's case proceeded to jury trial. *Id*. The jury found Ruble guilty as to all three charges on May 27, 2016. *Id.* at 2. During the formal sentencing hearing on September 6, 2016, the trial court granted the State's motion to dismiss the attempted robbery conviction because that conviction merged with the felony murder conviction. *Id.* The

---

[1] Because Ruble filed an amended petition, the Court declares moot his original petition (Dkt. 1)

trial court adopted the jury's sentencing recommendations, imposed sentences of life imprisonment for the murder conviction and ten years' imprisonment for the conspiracy conviction, and ordered the sentences to be served consecutively (Dkt. 10 at 2).

Ruble filed a direct appeal in the Oklahoma Court of Criminal Appeals (OCCA), raising five claims (Dkt. 14-2). First, Ruble complained he was deprived of his Sixth and Fourteenth Amendment rights to a fair trial because the trial court improperly overruled his challenges to certain prospective jurors for cause and prevented him from removing two biased jurors. *Id*. at i. Second, Ruble complained prosecutorial misconduct constituted plain error and deprived him of a fair trial. *Id*. Third, Ruble complained the trial judge erred in not instructing the jury on a lesser offense. *Id*. at i-ii. Fourth, Ruble complained of ineffective assistance of trial counsel. *Id*. And fifth, Ruble complained the accumulation of errors deprived him of a fair trial. *Id*. The OCCA reviewed Ruble's appeal and, on December 14, 2017, affirmed his conviction and sentence in a summary opinion (Dkt. 14-1).

Ruble, appearing *pro se*, filed a federal habeas petition on March 4, 2019, reasserting his claim that the trial court violated his due process rights by failing to exclude biased jurors. (Dkt. 1, at 5). After obtaining habeas counsel, and with leave of Court, Ruble filed an amended petition identifying three grounds for relief:

  (1) The trial court's erroneous rulings on challenges for cause violated Ruble's Sixth and Fourteenth Amendment rights;

  (2) The cumulative effect of prosecutorial misconduct constituted plain error and deprived Ruble of a fair trial; and

  (3) An ineffective assistance of trial counsel claim in violation of the Sixth and Fourteenth Amendments.

(Dkt. 10 at ii-iii).

**DISCUSSION**

Because Ruble is a state prisoner, the Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of his claims.  Under the AEDPA, a federal court may grant habeas relief to a state prisoner "only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  In addition, before a federal court may grant habeas relief, the state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1)(A), by "fairly present[ing] the substance of his federal habeas claim[s] to state courts," *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002).  And, in most cases, the prisoner must file a federal habeas petition within one year of the date on which his convictions became final.  *See* 28 U.S.C. § 2244(d)(1).

Under § 2254(d), the AEDPA limits the ability of a federal court to grant habeas relief when a state prisoner's federal claims were "adjudicated on the merits in State court proceedings." With respect to such claims, a federal court may not grant habeas relief unless the prisoner first demonstrates that the state court's adjudication of those claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, 28 U.S.C. § 2254(d)(2).

I.      STATUTE OF LIMITATIONS

Respondent contends that Ruble's grounds two and three are time-barred, because Ruble did not bring these claims within one year of the date that his convictions became final (Dkt. 14 at 31).  The AEDPA provides that a one-year period of limitation applies to the "application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."  28 U.S.C.

§ 2244(d)(1).  The limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1)(A)-(D).  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. §2244(d)(2). When calculating the date of a final judgment "[u]nder § 2244(d)(1)(A), a petitioner's conviction is not final and the one-year limitation period for filing a federal habeas petition does not begin to run until . . . after the United States Supreme Court has denied review, or, if no petition for certiorari is filed, after the time for filing a petition for certiorari with the Supreme Court has passed." *Harris v. Dinwiddie*, 642 F.3d 902, 906 n.6 (10th Cir. 2011) (quoting *Locke v. Saffle,* 237 F.3d 1269, 1273 (10th Cir. 2001)).

The OCCA affirmed Ruble's convictions on December 14, 2017.  From this date, Ruble had 90 days to seek *certiorari* with the United States Supreme Court.  *Locke*, 237 F.3d at 1273. Because Ruble did not seek *certiorari* review (Dkt. 1 at 12), his one-year period began on March 15, 2018.  And, absent any periods of statutory or equitable tolling, his limitation period expired on March 15, 2019.

Ruble filed his original petition on March 4, 2019, raising a single claim regarding the trial

court's rulings on his challenges for cause.  Subsequently, Ruble amended his petition on November 22, 2019, to reassert his original claim and to include two new claims, one alleging prosecutorial misconduct and the other alleging ineffective assistance of trial counsel.  On these facts, the Court finds that the claim asserted in ground one of the amended petition is timely, but the claims asserted in grounds two and three are not unless (1) the new claims relate back to the original claim, or (2) the new claims are timely through application of statutory or equitable tolling.

Ruble contends the claims he asserts in grounds two and three should relate back to the date he filed his original petition.  For a claim to relate back to the original filing date, the claim must arise out of the "conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  In habeas proceedings, the Supreme Court takes a narrow view of what constitutes the same "conduct, transaction or occurrence."  *Mayle v. Felix*, 545 U.S. 644, 662 (2005).  This is because "[i]f claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance."  *Id*.  Under Rule 2(c), *Rules Governing Section 2254 Cases in the United States District Courts*, a petitioner is instructed to "specify all [available] grounds for relief" and to "state the facts supporting each ground."  *Felix*, 545 U.S. at 655.  Thus, the question is whether "the original and amended petitions state claims that are tied to a common core of operative facts."  *Id*. at 664.  If so, the claims will relate back. *Id*.

In his original petition, Ruble points only to *voir dire*, claiming nine jurors should have been excused for cause.  Thus, only matters occurring during the *voir dire* process, and specifically as they relate to the jury panel's alleged bias based on publicity, relate back.  *Felix*, 545 U.S. at 664.  In his amended petition, Ruble points to prosecutorial misconduct occurring during closing

argument and ineffective assistance of trial counsel occurring when counsel failed to object to prosecutorial misconduct during closing and failed to object to inadmissible evidence (Dkt. 10 at 13-19).  Issues of prosecutorial misconduct and inadmissible evidence involve separate sets of facts, occurring at stages of trial different than *voir dire*, and facts that are different than those relevant to the issue of jury impartiality.  Thus, each new claim in the amended petition arises out of a separate, distinct "common core of operative facts."  *Felix*, 545 U.S. at 664.  As a result, Ruble's claims of prosecutorial misconduct and ineffective assistance of counsel do not relate back and remain untimely absent statutory or equitable tolling.

Ruble cannot benefit from statutory tolling.  Ruble filed a Pro Se Motion for Suspended Sentence on Tuesday, December 27, 2017 (Dkt. 14-4).  To qualify for statutory tolling, a defendant must properly file an application for State post-conviction or other collateral review with respect to the pertinent judgment or claim.  28 U.S.C. §2244(d)(2).  In this case, Ruble did not properly file his Pro Se Motion for Suspended Sentence. Okla. Stat. tit. 22, § 994 (2011) requires an applicant to file a Motion for Suspended Sentence within ten days after the OCCA's final order/opinion.  Because Ruble filed his Motion for Suspended Sentence thirteen days after the OCCA's final opinion, Ruble's Motion for Suspended Sentence was not "properly filed" and does not qualify for statutory tolling.  28 U.S.C. §2244(d)(2).  Moreover, because Ruble did not file any other application post-conviction relief or collateral review before March 15, 2019, Ruble is not entitled to statutory tolling.

Ruble contends, however, that his limitation period should be equitably tolled.  The United States Supreme Court has recognized that the principles of equitable tolling apply to the AEDPA's one-year statute of limitations.  *See Holland v. Florida*, 560 U.S. 631, 645 (2010) ("[W]e hold that § 2244(d) is subject to equitable tolling in appropriate cases.").  To be entitled to equitable

tolling, one must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id*. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408 (2005)). Here, Ruble has made no showing of extraordinary circumstances that stood in his way. Moreover, Ruble has not shown he diligently pursued his rights. The record shows that Ruble presented all three claims he asserts in the amended petition to the OCCA through his direct appeal. Ruble knew of these claims before his limitation period began to run and he failed to timely raise them. The Court finds Ruble is not entitled to equitable tolling for his claims of prosecutorial misconduct and ineffective assistance of counsel.

Based on the foregoing, the Court dismisses the amended petition, in part, as to Ruble's claims of prosecutorial misconduct and ineffective assistance of counsel, because those claims are untimely and do not relate back to the claim raised in the original petition.

## II.   RUBLE'S CLAIMS OF JURY BIAS AND PEREMPTORY STRIKES

Ruble claims he was denied his Sixth and Fourteenth Amendment rights to a fair trial and impartial jury (Dkt. 10 at 7). Specifically, Ruble argues that nine prospective jurors were biased because they possessed knowledge of the case via the news and other publicity, and Ruble was forced to use seven of his nine peremptory challenges to remove biased jurors. *Id*. Ultimately, Ruble complains two jurors with prior knowledge of the case sat on the jury, and the trial court's failure to excuse them for cause denied him a fair and impartial trial. *Id*.

### A.   Background

The trial court conducted the initial jury questioning. (Dkt. 15-2 at 15-18). The trial court read the charges presented, the attorneys' names, and the defendant's name to the prospective jurors and inquired if the prospective jurors knew of the allegations, the attorneys, or the defendant. *Id*. There is no indication in the record that any members of the jury panel raised their hands. *Id*.

The following day, during the State's questioning of the jury panel, one prospective juror passed a note to the trial court indicating that she recalled hearing about the case on the news. (Dkt. 15-3 at 142-43). The State asked follow-up questions on that issue, and a number of prospective jurors indicated they had heard about this case on the news. *Id.* The trial court spoke to the jurors about this issue, taking concern with the fact no juror indicated they possessed knowledge of the case when previously asked by the trial court. *Id.* at 143-44. After the trial court's statement to the jury, the trial court allowed the state to continue its questioning of the jury. *Id.* at 143-44.

Ruble's trial counsel, outside the presence of the jury, argued that each juror who raised their hand about having knowledge of the case should be stricken for dishonesty and violating their oath, because they were dishonest when they did not respond to the trial court's question on the first day of *voir dire* (Dkt. 15-3 at 187-92). The State countered that self-reflection of the prospective jurors indicated that the prospective jurors were taking the case seriously, attempting to be honest, and attempting to clarify the record. *Id.* at 192-93. The parties agreed to question the jurors individually, and the trial court denied defense counsel's request to strike the majority of the panel. *Id.* at 194.

The parties conducted individual *voir dire* with many of the prospective jurors (Dkt. 15-3 at 200-74). For the most part, the jurors could not remember concrete details regarding news reports, and each indicated they could be fair and impartial. *Id.* During the individual *voir dire*, the court noted that its question about knowledge of the case was likely too vague, because most of the jurors drew a distinction between hearing about the case and having knowledge of the case. *Id.* at 235.

Ultimately, out of those individually questioned by the parties, defense counsel challenged thirteen prospective jurors for cause; however, the trial court denied these challenges (Dkt. 15-3 at

205-73; Dkt. 15-4 at 399-400). Additionally, the parties agreed to strike for cause four prospective jurors who were individually questioned (Dkt. 15-3 at 219-74; Dkt. 15-8 at 306-07). Following this, the State passed the panel for cause (Dkt. 15-3 at 219-74). After *voir dire*, the parties exercised their peremptory strikes. The defense struck nine prospective jurors and one alternate. *Id*. Defense counsel noted that he used most of his peremptory strikes to remove jurors "exposed" to pretrial publicity, and that if he had more strikes, he would have struck two additional biased jurors: I.B. and H.C. (Dkt. 15-4 at 415).

Ruble claimed on direct appeal, and now claims, that the presence of I.B. and H.C. on the jury violated his right to a fair and impartial jury and that his use of peremptory challenges violated his right to a fair and impartial jury. (Dkt. 14-2; Dkt. 10) The OCCA reviewed these claims and held (1) the trial court did not abuse its discretion in denying Ruble's request to strike certain jurors for cause, and (2) Ruble's jury was impartial because the record did not support any claim that jurors were untruthful, dishonest or biased. (Dkt. 14-1 at 2-4).

### B.      Clearly established federal law

Under the Sixth Amendment to the Constitution, a defendant has a right to trial by an impartial jury. "One touchstone of a fair trial is an impartial trier of fact – 'a jury capable and willing to decide the case solely on the evidence before it.'" *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) (quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982)). The proper standard for determining when a prospective juror should be excused for cause is whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 420 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45 (1980)). Further, the Supreme Court has stressed that the trial court is granted wide discretion in conducting *voir dire* in areas of inquiry that might tend

to show juror bias. *Mu'min v. Virginia*, 500 U.S. 415, 427 (1991). "*Voir dire* examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Id.* at 431.

When determining the impartiality of a jury, it is not required that a "juror[] be totally ignorant of the facts and issues involved." *Irwin v. Dowd*, 366 U.S. 717, 722 (1961).

> In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. *It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.*

*Id.* at 722-23 (emphasis added). Moreover, the analysis for a "claim that [a] jury was not impartial . . . must focus . . . on the jurors who ultimately sat." *Ross v. Oklahoma*, 487 U.S. 27, 86 (1988). When analyzing a trial court's determination of a juror's bias, the question is one of fact. *Witt*, 469 U.S. at 429 ("The trial judge is of course applying some kind of legal standard to what he sees and hears, but his predominant function in determining juror bias involves credibility findings whose basis cannot be easily discerned from an appellate record. These are the "factual issues" that are subject to § 2254(d)."). In a § 2254 habeas proceeding, "a determination of a factual issue made by a State court shall be presumed correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1). "Thus, the question is whether there is fair support in the record for the state courts' conclusion that the jurors here would be impartial." *Patton v. Yount*, 467 U.S. 1025, 1038 (1984); *see also Sallahdin v. Gibson*, 275 F.3d 1211, 1224 (10th Cir. 2002) ("A trial judge's determination of a potential juror's bias under this standard is a factual finding entitled to a presumption of

correctness." (quoting *Moore v. Gibson*, 195 F.3d 1152, 1168 (10th Cir. 1999)).[2]

Moreover, the Supreme Court has "long recognized the role of the peremptory challenge in reinforcing a defendant's right to trial by an impartial jury." *United States v. Martinez-Salazar*, 528 U.S. 304, 311 (2000).  But "such challenges are auxiliary; unlike the right to an impartial jury guaranteed by the Sixth Amendment, [and] peremptory challenges are not of federal constitutional dimension." *Id.*; *see also Stilson v. United States,* 250 U.S. 583, 586 (1919) ("There is nothing in the Constitution of the United States which requires the Congress to grant peremptory challenges.").  When a defendant exercises a peremptory challenge to remove a juror who should have been removed for cause, a defendant's peremptory challenges have not been "denied or impaired." *Martinez-Salazar*, 528 U.S. at 317.

### C.     Analysis

In the case before the Court, Ruble complains he was forced to use seven of his nine peremptory strikes to remove jurors who should have been removed for cause, and that two jurors – who should have been removed for cause – sat on the jury. (Dkt. 10 at 7).

### 1.  Peremptory challenges

Ruble's first complaint is about using peremptory challenges to remove biased jurors.  The OCCA denied this claim and found the trial court did not abuse his discretion in denying Ruble's request to remove thirteen specific jurors for cause.  Specifically, the OCCA found that the jurors were not untruthful, dishonest, or biased.

---

[2] The Supreme Court has specifically rejected the notion that questions of bias are a "mixed question of law and fact." *Patton*, 467 U.S. at 1031, n.6 (1984) ("[The Court of Appeals] stated that whether juror Hrin was unconstitutionally biased was a mixed question of law and fact under *Irvin*.  [The Court of Appeals] therefore did not apply the presumption of correctness that is applicable to the factual findings of a state court in a federal habeas corpus proceeding, 28 U.S.C. § 2254(d)." (internal citations omitted).

As *Martinez-Salazar* holds, when a defendant exercises a peremptory challenge to remove a juror who should have been removed for cause, a defendant's peremptory challenges have not been "denied or impaired."  528 U.S. at 315-17 ("In choosing to remove Gilbert rather than taking his chances on appeal, Martinez-Salazar did not lose a peremptory challenge. Rather, he used the challenge in line with a principal reason for peremptories:  to help secure the constitutional guarantee of trial by an impartial jury.").  Because Ruble used his peremptory challenges for the purpose of removing biased jurors and securing an impartial jury, Ruble's peremptory challenges were not "denied or impaired."  *Id*. at 317. Thus, it was reasonable for the OCCA to reject this portion of his claim, and Ruble has not presented a cognizable claim for this court to review. *Martinez-Salazar*, 528 U.S. at 317 (noting that "peremptory challenges are not of federal constitutional dimension"); *Stilson*, 250 U.S. at 586 ("There is nothing in the Constitution of the United States which requires the Congress to grant peremptory challenges.")

*2.  Biased Jurors*

Ruble's second complaint is that he was deprived of an impartial jury because I.B. and H.C., both of whom he alleged were biased, sat on the jury.  In support of this proposition, Ruble contends jurors I.B. and H.C. possessed prior knowledge of the case and were untruthful when the trial court asked the jury panel if anyone had knowledge of the case.  The OCCA reviewed Ruble's claim, denied the same, and made the factual finding that the jurors in question were not "untruthful, dishonest, or biased."  (Dkt. 14-1 at 2-3)

The Supreme Court addressed the issue of publicity in *Patton v. Yount*, 467 U.S. 1025 (1984).  In *Patton*, the *voir dire* questioning of two prospective jurors who were ultimately seated yielded ambiguous and contradictory answers.  467 U.S. at 1039.  The *Patton* Court noted

> The testimony of each of the three challenged jurors is ambiguous and at times contradictory.  This is not unusual on voir dire examination, particularly in a highly

publicized criminal case.  It is well to remember that the lay persons on the panel may never have been subjected to the type of leading questions and cross-examination tactics that frequently are employed, and that were evident in this case. Prospective jurors represent a cross section of the community, and their education and experience vary widely.  Also, unlike witnesses, prospective jurors have had no briefing by lawyers prior to taking the stand.  Jurors thus cannot be expected invariably to express themselves carefully or even consistently.  Every trial judge understands this, and under our system it is that judge who is best situated to determine competency to serve impartially.  The trial judge properly may choose to believe those statements that were the most fully articulated or that appeared to have been least influenced by leading.

*Id*. at 1039-40.

One juror in *Patton* initially testified that he possessed an opinion of the case and would need evidence to overcome his inclination of guilt.  *Id*. at 1036.  Later in *voir dire*, "the juror clearly and forthrightly stated: "I think I could enter it [the jury box] with a very open mind.  I think I could . . . very easily.  To say this is a requirement for some of the things you have to do every day."  *Id*. at 1039 (alteration in original).  The Supreme Court upheld the state courts' finding of fact, because "there [was] fair support in the record for the state courts' conclusion that the jurors [in that case] would be impartial."  *Id*. at 1038.  The *Patton* court performed the same analysis for two other jurors who gave ambiguous and contradictory answers during *voir dire*, reaching the same conclusion.  *Id*. at 1039-40.

In its summary opinion, the OCCA found that Ruble failed to "properly preserve" the issue of biased jurors and that the record did "not support any claim the jurors were untruthful, dishonest, or biased" (Dkt. 14-1 at 2-3).  The record indicates that on the first day of trial, the trial court inquired whether the jury panel knew anything about the allegations of the case, the lawyers or Ruble.  (Dkt. 15-1 at 17).  All prospective jurors indicated in the negative.  *Id*.  When questioned the following day during *voir dire*, a number of the jurors indicated they had heard of the facts,

including the two jurors in question:  I.B. and H.C.  (Dkt. 15-2 at 226, 256-57).  The trial court

inquired of each juror individually.  *Id.*  For I.B., the trial court asked:

> THE COURT:  Can you base your decision and your verdict solely on what you
> hear in this room within these four walls and nothing else that you heard before or
> anything else you've heard outside or think about regarding this case?
>
> JUROR I.B.:  Most definitely.

(Dkt. 15-2 at 227).  The juror also testified that she did not intend to mislead the court, her memory

of the case only came to her upon reflection later, and her memory of the facts was vague.  (Dkt.

15-2 at 226-27).  The other juror in question testified similarly.  The trial court inquired of H.C.:

> THE COURT:  You can be fair and impartial?
>
> JUROR H.C.:  Yes.

(Dkt. 15-2 at 259).  Juror H.C. also testified that she would follow the court's instructions and

would base her decision only on the facts and evidence presented in the courtroom (Dkt. 15-2 at

259).

The case at hand is indistinguishable from *Patton*.  While the jurors may have given

contradictory answers when initially asked about prior knowledge of the case, the trial court

inquired as to each juror, and the two jurors in dispute testified they only recalled minimal facts of

the case upon reflection of the trial court's presentation of facts.  The jurors testified they had no

intent to deceive the court and rectified their discrepancies during *voir dire*.  Having the benefit of

observing demeanor, the trial judge is in the best position to determine credibility.  *Sallahdin*, 275

F.3d at 1225.  Because the record supports the trial court and the OCCA's finding that the jurors

in question were not "untruthful, dishonest, or biased" (Dkt. 14-1 at 2-3), the Court finds and

concludes that the OCCA's decision was not based on an unreasonable determination of the facts.

28 U.S.C. §2254(d)(2), (e)(1).

Based on the foregoing, the Court denies the amended petition as to the claim asserted in ground one.

## CONCLUSION

For the reasons stated in the opinion, the Court concludes that the claims Ruble asserts in grounds two and three shall be dismissed as barred by the one-year statute of limitations. The Court further concludes that Ruble has not shown that the OCCA's adjudication of the claims he asserts in ground one was objectively unreasonable, as a matter of law or a matter of fact. As a result, 28 U.S.C. § 2254(d) bars relief as to ground one. The Court therefore dismisses, in part, and denies, in part, the amended petition for writ of habeas corpus.

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, requires "[t]he district court [to] . . . issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court rejects the merits of petitioner's constitutional claims, he must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because Ruble has not made the requisite showing on any of his claims to be entitled to a certificate of appealability, the Court denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is DECLARED MOOT.

2. The Amended Petition for Writ of Habeas Corpus (Dkt. 10) is DENIED in part and DISMISSED in part.

3. A certificate of appealability is DENIED.

4. A separate judgment shall be entered in this matter.

**DATED** this 18th day of March 2022.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE